IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL ZAMBRANO,

    Plaintiff,

v.                                                               Civ. No. 22-28 GBW

KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Opposed Motion to Reverse or Remand. *Doc. 24*. For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the SSA.

### I.    Procedural History

Plaintiff filed an initial protective application for SSI on May 30, 2013, alleging disability beginning May 30, 2013. Administrative Record ("AR") at 99-100. Plaintiff's application underwent two rounds of review by the Social Security Administration, and the SSA's determination of no disability was remanded twice by the District Court on September 13, 2018, and July 27, 2020. AR at 898-907; 1300-06. After the second remand from the District Court, a third hearing was held by an Administrative Law Judge ("ALJ") on June 24, 2021. AR at 1225-1271. On November 4, 2021, the ALJ issued a

decision in which he found that Plaintiff was not disabled between the alleged onset date of May 30, 2013, through August 24, 2021, but that Plaintiff was disabled beginning August 24, 2021. AR at 1212-13. Plaintiff did not file exceptions to the ALJ's decision with the Appeals Council, and the Appeals Council did not take up review of the decision on its own, making the ALJ's denial the Commissioner's final decision. *See* 20 C.F.R. § 416.1484(d).

On January 13, 2022, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *See doc. 1*. Plaintiff filed his Opposed Motion to Reverse or Remand on October 18, 2022. *Doc. 24*. The Commissioner responded on December 20, 2022. *See doc. 27*. Briefing on Plaintiff's Motion was complete on January 2, 2023, *see doc.* 29, after Plaintiff filed his reply, *doc. 28*.

II.     **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

### III.   ALJ EVALUATION

#### A. Legal Standard

For purposes of Supplemental Security Income benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 416.920. If the Commissioner finds the individual disabled at any step, the next step is not taken. *Id.* § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 416.945(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On November 4, 2021, the ALJ issued his decision denying Plaintiff's application for SSI benefits between the alleged onset date of disability of May 30, 2013, and August 24, 2021. *See* AR at 1212-14. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since the date of application." AR at 1202. At step two, he found that Plaintiff has the following severe impairments: "lumbar degenerative disc disease, cervical degenerative disc disease, mild arthritis in the bilateral hands, posttraumatic stress disorder, antisocial personality disorder, and depression." AR at 1203. He also noted that Plaintiff had other, non-severe impairments including, hypertension and hepatitis C. *Id.* At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. AR at 1203-05.

At step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b) with several physical limitations. AR at 1205. The ALJ also noted that Plaintiff can "perform simple, routine tasks and perform simple work-related decisions," and that he "can interact with supervisors and coworkers occasionally, but can have no more than infrequent, superficial interaction with the general public." *Id.* Finally, Plaintiff "can tolerate few changes in a routine work setting," and "[h]is time off task can be accommodated by normal breaks." *Id.*

In making these findings, the ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms which included neck pain, back pain, and depression. *Id.* However, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and the other evidence in the record. *Id.* at 1206. The ALJ reviewed Plaintiff's medical record and gave great weight[1] to the medical opinions of Drs. Wewerka and Robinowitz, partial weight to the medical opinions of Drs. Romanik, Schnute, Hughson, Glassheim, and Salgado, and little weight to the medical opinions of Drs. Cardenas and Vigil. AR at 1210-11.

---

[1] Because Plaintiff's initial SSI application was filed on May 30, 2013, the pre-2017 SSA regulations that govern the assessment of medical opinions apply to his case. 20 C.F.R. § 416.927.

## IV.    ANALYSIS

Plaintiff moves the Court to reverse or remand the ALJ's decision based on two main arguments: (1) the ALJ improperly assessed the medical opinion of Dr. Hughson, *doc. 24* at 23-25, 26-27; and (2) the ALJ improperly assessed Plaintiff's symptom testimony, *id.* at 25-26.  Defendant contests both of these arguments.  *See generally doc. 27*.  For the reasons explained below, the Court agrees with Defendant.

### A.    The ALJ Did Not Commit Legal Error in His Assessment of Dr. Hughson's Medical Opinion

When assessing medical opinions in claims filed before March 27, 2017, an ALJ must evaluate every medical opinion in the record and examine the weight of each opinion based on a variety of factors listed in the regulations.  20 C.F.R. § 416.927(c).  In the assessment, the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the "correct legal standards have been applied."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "'sufficiently specific' to enable [the] court to meaningfully review his findings") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Although ALJs need not cite to specific record evidence, they must "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence."  *See Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-

7

JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021).

Plaintiff argues that the ALJ failed to provide sufficient explanation for his finding that Dr. Hughson's medical opinion should only receive partial weight. *Doc. 24* at 23. In his opinion, the ALJ adopted many of Dr. Hughson's findings, including that Plaintiff has moderate limitations in the ability to understand and remember detailed instructions, interact with co-workers and supervisors, and concentrate. AR at 1204, 1210. The only portion of Dr. Hughson's opinion which the ALJ did not directly adopt was the finding that Plaintiff has a marked limitation in interacting with the public. *Id.* In support of his conclusions regarding Dr. Hughson's opinion, the ALJ cites to two medical records from 2016 and 2019 and finds that these records "indicate stable functioning with conservative and intermittent treatment." AR at 1210 (citing AR at 1053-56, 1169-94). The ALJ also found that Plaintiff had only a moderate limitation in interacting with others because he indicated in 2019 that he had "good relationships and the ability to take walks for exercise." AR at 1204. Given the ALJ's discussion of the record, the Court finds that the ALJ's explanation for his findings is sufficient under the law.

Plaintiff also argues that when the ALJ determined Plaintiff's RFC, the ALJ failed to incorporate Dr. Hughson's finding that the Plaintiff has a "mild limitation" in his ability to understand and remember very short and simple instructions. *Doc. 24* at 25. First, the Court notes that the ALJ found that Plaintiff has a moderate limitation in

8

understanding, remembering, or applying information, AR at 1204, and the ALJ limited Plaintiff to performing only simple, routine tasks and simple work-related decisions in the RFC, AR at 1205. It is not clear how a *mild* limitation in understanding and remembering very short and simple instructions is necessarily incompatible with the ability to perform simple, routine tasks and to make simple decisions. Regardless, the ALJ provided sufficient explanation for his RFC finding regarding Plaintiff's mental limitations. With respect to Plaintiff's ability to understand and remember, the ALJ found that in 2013, Plaintiff "displayed the ability to repeated [sic] three words immediately and after a five-minute delay," and he "displayed linear thought process and relevant thought content." *Id.* Further, the ALJ gave great weight to the medical opinions of Drs. Wewerka and Robinowitz who found that Plaintiff can understand, remember, and carry out at least simple instructions because these opinions were consistent with the more recent treatment records from 2016 and 2019. AR at 1210 (citing AR at 1053-56, 1169-94).

Finally, the Court is not persuaded by Plaintiff's implied argument that the ALJ's findings with regard to Dr. Hughson's medical opinion are not supported by substantial evidence because the ALJ failed to include certain medical records in his analysis, including medical records from before 2013. *Doc. 24* at 24. Although the medical opinions cited by Plaintiff in his brief present some abnormal mental status findings, *see, e.g.*, AR at 677, 685 (medical records from 2015 indicating depression,

9

irritability, and difficulty with sleep), AR at 693 (medical records from 2012 indicating irritability, bipolar disorder, and slight paranoia and suspicion), AR at 1115 (psychiatric treatment notes from 2016 indicating PTSD and depression), Plaintiff has not presented overwhelming evidence that Plaintiff has more than moderate limitations in interacting with others or understanding, remembering, or applying information. *Grogan*, 399 F.3d at 1261. As a result, the Court finds that the ALJ's finding with respect to Dr. Hughson's medical opinion is supported by substantial evidence.

**B.     The ALJ Properly Assessed Plaintiff's Symptom Testimony**

SSA regulations prescribe a two-step process for evaluating a claimant's statements about their symptoms. Step one asks "whether there is an underlying medically determinable . . . mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529(b). If such an impairment is established at step one, step two requires the ALJ to "evaluate the intensity and persistence of [those] symptoms" to determine the extent to which the symptoms limit an individual's "capacity for work." 20 C.F.R. § 404.1529(c)(1). In making the step two assessment, the agency "consider[s] all of the available evidence from [the individual's] medical sources and nonmedical sources about how [his or her] symptoms affect [him or her]," including medical opinions, objective medical evidence, and "any other information [the individual] may submit about [his or her] symptoms." *Id.* at § 404.1529(c)(1)-(3).

During the step two assessment, the ALJ will first assess whether the "individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings." SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ finds that the individual's symptom statements are not "substantiate[d]" by the objective medical evidence, the ALJ may not "disregard" the individual's statements but must instead "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *5-6.

The ALJ's final evaluation of an individual's symptoms must avoid "conclusory" findings, and it must include "specific reasons for the weight given to the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. Although the ALJ's reasoning must be "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms," *id.*, the ALJ does not need to complete a "formalistic factor-by-factor recitation of the evidence," *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ erred when he found that Plaintiff's symptom allegations are inconsistent with the record, *see* AR at 1206, because the ALJ gave only a "summary rationale [which] provides no explanation for how the evidence supports or fails to support Plaintiff's symptom allegations," *doc. 24* at 26. The Court, however, finds that the ALJ thoroughly discussed why he found each of Plaintiff's symptoms at

11

least somewhat inconsistent with the medical record.  In regard to Plaintiff's reports of inability to work due to extreme back, neck, and hand pain, the ALJ analyzed several years of medical records, many of which included relatively normal or mildly abnormal clinical findings related to Plaintiff's bone and muscle health in his back, neck, and hands.  *See* AR at 1206-07.  For Plaintiff's reports of mental health symptoms including depression, anger, and discomfort with interacting with people other than Plaintiff's girlfriend, the ALJ assessed Plaintiff's mental health medical history.  The ALJ noted evidence of Plaintiff's restricted affect, irritability, depression, and distrust of other people in 2013 and 2016, but he also found evidence that Plaintiff was "engaged and appropriate" with mental health examiners throughout the relevant time period and that he reported mental stability and improvement with treatment in 2016 and 2019.  AR at 1209.  Because the Court can clearly follow how the ALJ reached his conclusion regarding Plaintiff's symptoms based on the medical evidence, the Court does not find that the ALJ improperly assessed Plaintiff's symptom testimony.  *Keyes-Zachary*, 695 F.3d at 1166.

Plaintiff next argues that the ALJ incorrectly stated that Plaintiff stopped taking mental health medication when he did not.  *Doc. 24* at 26.  The ALJ wrote: "In February 2019, [Plaintiff] reported that he had discontinued medications but continued to be stable, without complaints."  AR at 1209 (citing AR at 1191).  It is true that the portion of the record to which the ALJ cited is a treatment record from April 2019, not February,

12

and that the April 2019, record indicates that Plaintiff was taking mental health medication (Wellbutrin). AR at 1189. However, the February 2019 treatment record from the same provider indicates that Plaintiff had, at least temporarily, stopped taking mental health medication. AR at 1187. The ALJ's incorrect citation was clearly a typographic error, and the Court will not remand on this basis.

V.  **CONCLUSION**

For the foregoing reasons, the Court finds no reversible error in the ALJ's decision. Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc. 18*) and AFFIRMS the judgment of the SSA.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**